**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| The Lyon Companies, LLC[1] | Case No. 24-30684-jal |
| Debtor. | Honorable Joan A. Lloyd |

**MOTION OF THE DEBTOR AND**
**DEBTOR-IN-POSSESSION FOR ENTRY**
**OF AN ORDER (I) APPROVING BIDDING PROCEDURES;**
**(II) APPROVING THE TRANSACTION ULTIMATELY SELECTED**
**AS THE HIGHEST AND BEST ALTERNATIVE THROUGH THE BIDDING**
**PROCESS, INCLUDING A POSSIBLE SALE OF ASSETS FREE AND CLEAR OF**
**LIENS, CLAIMS AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

The Lyons Companies, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") hereby moves (the "Motion") for entry of an order under sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (I) approving bidding procedures in connection for a transaction involving the disposition of substantially all of the Debtor's assets; (II) approving the transaction ultimately selected as the highest and best alternative through the bidding process, including a possible sale of assets free and clear of liens, claims and encumbrances; and (III) granting related relief. In support of the Motion, the Debtor respectfully states as follows:

---

[1] The Debtor in this chapter 11 case is (with the last four digits of its federal tax identification number in parentheses): The Lyon Companies, LLC (0115). The Debtor's principal address is 11401 Electron Drive, Louisville, Kentucky 40299.

<u>PRELIMINARY STATEMENT</u>

1.      One of the primary goals of this Chapter 11 Case is to conduct a fulsome process to investigate all available strategic alternatives to maximize the value of the Debtor's assets, which the Debtor has already begun to do with the assistance of its bankruptcy counsel.  The Debtor developed the bidding procedures described herein (the "<u>Bidding Procedures</u>") in order to facilitate a prompt and fulsome marketing process that will enable the Debtor to identify and select an appropriate sale or transaction to maximize value for the benefit of creditor.  Such transaction may include a sale of all or substantially all of the Debtor's assets free and clear of all liens, claims and interests pursuant to section 363(f) of the Bankruptcy Code, and the assumption and assignment of contracts and leases pursuant to section 365 of the Bankruptcy Code in connection with such a sale. Other possible transaction structures may include a refinancing, restructuring, a purchase of the Debtor's equity interests, recapitalization or other forms of transaction structure identified through the Bidding Procedures that is deemed to be the highest and best alternative available under the circumstances.

2.      Initially, this Motion seeks only the entry of an order approving the Bidding Procedures and related relief (the "<u>Bid Procedures Order</u>"), including the approval of the form and manner of notice the Debtor intends to provide in respect of the transaction process and the various dates and deadlines established by the Bidding Procedures, and the scheduling of a final hearing (the "<u>Transaction Hearing</u>") at which the Court will consider authorizing and approving the transaction that is ultimately selected through the Bidding Process.

3.      Through the transaction process the Debtor will determine the highest and best bid or transaction alternative available, in consultation with Simmons Bank ("<u>Simmons</u>") and the official committee of unsecured creditors (the "<u>Committee</u>").  The Debtor will disclose the details

23701056.v4

of such sale or transaction to the Bankruptcy Court in a subsequent filing, and will seek approval of such sale or transaction at the Transaction Hearing.

4.      For the reasons set forth below, the Debtor believes that such relief is in the best interest of its estate and creditors, and the Motion should therefore be granted.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue for the Debtor's Chapter 11 Case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory basis for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code as well as Bankruptcy Rules 2002 and 6004.  Furthermore, to the extent the transaction ultimately selected involves the assumption and/or the assignment of any executory contracts or unexpired leases, the statutory bases for such relief also include section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

**BACKGROUND**

**A.      General Background**

7.      On March 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"). As a result, the Debtor commenced the current Chapter 11 Case.

8.      The Debtor is continuing to manage and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On April 3, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Case. [Docket No. 61.] No trustee or examiner has been appointed in the Chapter 11 Case.

3

10.     A description of the Debtor's business and the events leading to the commencement of the Chapter 11 Case is set forth in the *Declaration of Steven Hufft in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") [Docket No. 3.]

**B.     The Debtor's Prepetition Sale and Marketing Efforts**

11.     Prior to the Petition Date, on or about November 7, 2023, the Debtor entered into a finance advisory services agreement with Innovo Solutions, LLC ("Innovo") to act as a consultant in various debt finance transactions.  In addition to providing consultation regarding various debt finance transactions, Innovo also directly or indirectly may be involved, including without limitation, in joint ventures, project management, debt financing, and similar corporate finance and business development transactions.  Although Innovo did not identify a transaction prior to the Petition Date, the Debtor hopes that it "primed" the market for a transaction.

**C.     The Proposed Transaction Process**

12.     The Debtor's counsel has already been in contact with numerous potential transaction counterparties (the "Potential Transaction Counterparties").  The Debtor has prepared a virtual data room (the "Data Room") with customary due diligence materials.  The Debtor's counsel is in contact with the Potential Transaction Parties and is giving them access to the Data Room subject to execution of a confidentiality agreement.

13.     The Debtor also anticipates filing an application to engage an investment banker or advisory firm which will help the Debtor market it's business, engage with Potential Transaction Counterparties, comply with the Bidding Procedures, and otherwise maximize the value of the Debtor's assets.  To the extent that the Debtor engages an investment banker or advisory firm. Such banker or firm will coordinate with the Debtor's management and counsel in making decisions regarding the implementation of the Bidding Procedures, the selection of a Stalking

23701056.v4

Horse (if any), the evaluation of Proposed Transactions, the conduct of the Auction, and the selection of the Successful Bid and Backup Bid.

**RELIEF REQUESTED**

Bid Procedures Order

14.    By this Motion, the Debtor initially seeks the entry of an order approving the proposed Bidding Procedures, scheduling a final hearing on June 26, 2024 at 10:00 a.m. (Eastern Daylight) to approve the sale or transaction ultimately selected through the transaction process as the highest and best alternative at the Transaction Hearing, approving the form and manner of notice in respect of the same, and granting related relief (the "Bid Procedures Order"). A copy of the proposed Bid Procedures Order is filed with this Motion.

15.    The Debtor also respectfully requests that the Bidding Procedures Order authorize the Debtor to designate, in consultation with the Consultation Parties (defined below), a stalking horse purchaser or bidder ("Stalking Horse") and to offer such Stalking Horse customary protections in exchange for agreeing to serve as a stalking horse ("Stalking Horse Protections"), including a breakup fee ("Breakup Fee") and expense reimbursement ("Expense Reimbursement") to be negotiated, but in no event to exceed 2.5% in aggregate of the total purchase price or other consideration to be paid without further approval by the Court, a minimum overbid of any competing bid with a value at least 4% greater than the value of the Stalking Horse's bid (a "Minimum Overbid"), and a minimum initial bidding increment of at least $50,000 to be used at any auction ("Bidding Increment"). Such designation could be made by the Debtor at any time during the Bidding Process in its business judgment, but in no event later than May 24, 2024 (the "Stalking Horse Designation Deadline"). The Debtor will coordinate such designation with the Consultation Parties. The Debtor shall file a notice of any such designation with the Bankruptcy

5

Court by the Stalking Horse Designation Deadline.    To the extent that the Debtor does not designate a Stalking Horse by the Stalking Horse Designation Deadline, then the Debtor, in consultation with the Consultation Parties, may establish a minimum bid amount which it will file a notice of with the Bankruptcy Court.

Transaction Approval Order

16.    Second, this Motion also seeks the entry of an order following the Transaction Hearing approving the transaction that is ultimately selected as the highest and best alternative through the transaction process and presented to the Bankruptcy Court for approval (the "Successful Bidder Transaction"), and authorization to consummate the same.

17.    In the event the transaction involves the sale of all or substantially all of the Debtor's assets, the Debtor will seek approval of such a sale free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and may also seek the approval of the assumption and/or assignment of executory contracts and unexpired leases in connection therewith pursuant to section 365 of the Bankruptcy Code.

18.    The Debtor intends to file a proposed form of order (the "Transaction Approval Order") at least two days in advance of the Transaction Hearing.

The Proposed Bidding Procedures

19.    Third, the Debtor seeks approval of the Bidding Procedures to facilitate a successful marketing and transaction process. The following proposed Bidding Procedures were developed by the Debtor and its counsel.  The Bidding Procedures aim to provide the Debtor with maximum flexibility to conduct the Bidding Process in a manner it believes will maximize value and facilitate competitive bidding in accordance with the timeline set by the Bidding Procedures.

6

20.    Among other things, the proposed Bidding Procedures: (a) identify the relevant dates and deadlines for submitting bids and conducting an auction (the "Auction"); (b) define minimum requirements for qualified bids (which may be modified by the Debtor in its discretion, after consultation with the Consultation Parties (defined below), as the process progresses); and (c) give certain consultation rights to Simmons and to the Committee (the "Consultation Parties").

21.    The Bidding Procedures are set forth in greater detail as an attachment to the proposed Bid Procedures Order.  The salient portions of the Bidding Procedures are as follows:

a.    **Stalking Horse Proposal Deadline**: Potential Transaction Counterparties interested in submitting a proposal to serve as Stalking Horse should submit a Bid (a "Stalking Horse Proposal") by no later than **May 24, 2024**.  A Stalking Horse Proposal should comply with all of the conditions of a Bid (as defined below) so that the Debtor may evaluate such Stalking Horse Proposal.

The Debtor reserves the right, in consultation with the Consultation Parties, to enter into an agreement with a Stalking Horse and provide such Stalking Horse with any or all of the Stalking Horse Protections.  The Debtor is under no obligation, however, to choose a Stalking Horse or to offer any of the Stalking Horse Protections.

If the Debtor identifies a Stalking Horse, the Debtor will file a notice with the Court and serve such notice on all other Qualified Bidders identifying the Stalking Horse and the terms of the Stalking Horse Bid, including any Stalking Horse Protections that have been agreed tom by the Stalking Hirse Designation Deadline.  To the extent that the Debtor does not designate a Stalking Horse by the Stalking Horse Designation Deadline, then the Debtor, in consultation with the Consultation Parties, may establish a minimum bid amount which it will file a notice of with the Bankruptcy Court.

b.    **Form of Transaction**: All Stalking Horse Proposals and Bids (defined below) must provide a description of the proposed transaction (the "Proposed Transaction"), including an indication of whether the Proposal relates to an acquisition of the entire business or a portion of the Debtor's assets, a refinancing of the Debtor's indebtedness, or any other form of transaction. The Proposal must also provide an overview of the key terms of the transaction as well as the anticipated transaction structure.  If the Proposal is for the purchase of less than the entire business, the Proposal must specify which assets will be acquired.

If the Proposal is for a refinancing transaction, the Proposal must provide the amount and form of capital, proposed sources and uses, post-transaction equity

ownership, treatment of existing debt, contemplated leverage, milestones, and any other similar substantive terms.

The Debtor will file a form of proposed asset purchase agreement (the "Form APA") within seven days of entry of the Bid Procedures Order and make a Word version of such Form APA in the Data Room.  If a Proposed Transaction is a bid for the purchase of the Debtor's assets under section 363 of the Bankruptcy Code, then any Bid (defined below) must contain a blackline comparing the Potential Transaction Parties' executed APA to the Form APA.  Provided, however, that if a Stalking Horse is designated then any Bid (defined below) must instead contain a blackline comparing the Potential Transaction Parties' executed APA to the Stalking Horse's APA.

c.    **Final Bid Deadline**:  All final and binding bids ("Bids") must be received by the Debtor's counsel on or before **5:00 p.m. (EST) on June 20, 2024** (the "Bid Deadline").

d.    **Qualified Bid Requirements**:  There are specific requirements for a Bid to be a qualified bid that will be considered by the Debtor (a "Qualified Bid") and reserve all rights in that regard.  The Debtor will determine, after consultation with its professionals and the Consultation Parties, and subject to the Bidding Procedures and the requirements set forth herein, whether a Bid is a Qualified Bid and, ultimately, a successful bid.  At minimum, to be a Qualified Bid, a Bid must be timely and submitted in writing with all required information and supporting documentation, and include the following:

(i)    a Bid for a sale transaction must include an executed asset purchase agreement ("APA"), clearly setting forth any conditions for closing and stating that the Bid is irrevocable as set forth below.  If a Proposed Transaction is a bid for the purchase of the Debtor's assets under section 363 of the Bankruptcy Code, then any Bid (defined below) must contain a blackline comparing the Potential Transaction Parties' executed APA to the Form APA.  Provided, however, that if a Stalking Horse is designated then any Bid (defined below) must instead contain a blackline comparing the Potential Transaction Parties' executed APA to the Stalking Horse's APA;

(ii)    a Bid that requires the assumption and assignment of an executory contract or unexpired lease must identify with particularity each and every unexpired lease or executory contract (each, an "Assumed Contract") to be assumed and assigned, and include an executed assumption and assignment agreement;

(iii)    a Bid must identify the structure proposed for undertaking the Proposed Transaction, including, if the Proposed Transaction is a Sale, the specific assets of the Debtor being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's structure relies;

(iv)    a Bid must be final and binding, and shall not be contingent upon any further due diligence investigation, any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(v)    a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor in consultation with the Consultation Parties) sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (whether because the party is a newly-formed entity or otherwise; each, a "<u>Sponsor</u>"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(vi)    a Bid must contain financial and/or other information that will allow the Debtor, in consultation with the Consultation Parties, to make a reasonable determination as to the bidder's financial and other capabilities to provide adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

(vii)    a Bid must disclose the identity of the bidder's organization and principals;

(viii)    a Bid must include an acknowledgement and representation that the bidder (a) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets to be acquired and liabilities to be assumed in making its bid; (b) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding any assets to be acquired or liabilities to be assumed or the completeness of any information provided in connection therewith, including by the Debtor, their professionals or any of their respective professionals and advisors, except as expressly stated in the APA or other transaction documentation; (c) is a sophisticated party capable of makings its own assessments in respect of making its Bid; and (d) has had the benefit of independent legal advice in connection with its Bid;

(ix)    a Bid must (a) include an acknowledgement and representation that the bidder will assume the obligations of each of the Debtor under all executory contracts, unexpired leases, and licenses proposed to be assigned; (b) contains the bidder's agreement to pay the related cure costs; and (c) indicate which of these executory contracts, unexpired leases, and licenses, if any, the bidder must be permitted to assume as a condition of closing;

(x)     a Bid must provide for closing of the transaction no later than July 19, 2024;

(xi)    a Bid must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transaction;

(xii)   a Bid for a sale transaction must include a cashier's check or be accompanied by a wire transfer payable or delivered to the Debtor, their counsel, or other agreed upon escrow agent, in an amount equal to five percent (5%) of the total purchase price in the APA, but not to exceed $300,000 (excluding any value associated with assumed liabilities, leases or contracts, the "Deposit");

(xiii)  a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the assets to be acquire or with respect to any possible transaction involving the Debtor;

(xiv)   a Bid must acknowledge in writing (a) that the bidder has not engaged in any collusion with respect to any Bids, specifying that it did not agree with any other Potential Transaction Party to control price; and (b) that the bidder agrees not to engage in any collusion with respect to any Bids, the Auction, or any Proposed Transaction;

(xv)    a Bid must constitute a good faith, *bona fide* offer to consummate a Proposed Transaction; and

(xvi)   a Bid must submit the bidder to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes related to the Debtor's qualifications of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Proposed Transaction documents and the closing, as applicable.

e.      **Evaluation of Qualified Bids**:  The Debtor will determine the sufficiency of any submitted Bid, after consultation with the Consultation Parties, and they reserve the right to consider late Bids in their discretion and to waive any of the requirements for a Bid to be a Qualified Bid in consultation with the Consultation Parties.  The Debtor shall, as promptly as practicable, notify bidders of their selection as a qualified bidder (each a "Qualified Bidder") and that their Bid is a "Qualified Bid."

f.      **The Auction**:  If more than one Qualified Bid is received, an Auction may be conducted on **June 24, 2024 at 10:00 a.m. (Eastern Daylight)** (the "Auction Date") at the offices of Debtor's counsel, or such other location as may be determined by the Debtor and communicated to Qualified Bidders.  Qualified Bidders at the Auction will be informed of the terms of the previous Bids made by other Qualified Bidders, including the identity of the Qualified Bid that the Debtor determines is the highest or best Bid received by the Bid Deadline.  Each Qualified Bidder at the Auction shall confirm that it has not engaged in any collusion with regard to the bidding or any sale of assets to be acquired.  Any assets to be acquired

23701056.v4

shall be sold free and clear of all liens, claims, and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code.

g.   **Auction Procedures**:  At the Auction, the Debtor reserves the right to disclose procedures that will govern the conduct of the Auction, including any minimum overbid requirements.  The Debtor reserves the right to modify such procedures in any way, subject to the reasonable consent of the Consultation Parties.  The Auction may be adjourned or cancelled as the Debtor, after consultation with the Consultation Parties, deems appropriate.  Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants.

h.   **Selection of Successful Bid**:  At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor, in consultation with the Consultation Parties (the "Successful Bid").  The Debtor also reserves the right to select a successful backup Bid in their sole discretion (the "Backup Bid").  As soon as practicable thereafter, the Debtor shall file with the Bankruptcy Court a notice of the Successful Bid and the Backup Bid.  The Successful Bid and the Backup Bid are binding upon the bidders who made them, and such parties shall be obligated to close such transactions subject to approval of the transaction by the Bankruptcy Court (and in the case of the Backup Bid, only in the event the Successful Bid fails to close).

i.   **Backup Bid**:  If the Successful Bidder fails to consummate the transaction, breaches the APA or other applicable transaction documents, or otherwise fails to perform, upon consultation with the Consultation Parties, the Debtor may consummate the proposed transaction with the Backup Bidder and without the need for further Court approval.

j.   **Right to Credit Bid**: Any Qualified Bidder who has a valid and perfected lien on any of the Debtor's assets (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's allowed secured claims pursuant to section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided* that a credit bid shall not constitute a Qualified Bid if the Bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any of the assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment).  Simmons reserves the right to credit bid some or all of their claims in the Collateral (as defined in the Interim Cash Collateral Order) to the extent permitted by section 363(k) of the Bankruptcy Code.

k.   **Transaction Hearing**:  The hearing in respect of the Successful Bid and Backup Bid (the "Transaction Hearing") will be conducted by the Bankruptcy Court on June 26, 2024 at 10:00 a.m. (Eastern Daylight).  At the Transaction Hearing, the Debtor will request that the Court enter the order approving the transaction (the

"Transaction Approval Order").  The Bankruptcy Court shall also determine: (a) any cure required under section 365(b) of the Bankruptcy Code if the affected landlord or contract party timely filed an objection to the Debtor's proposed cure of any unexpired lease or executory contract to be assumed and assigned, and (b) if applicable, whether the Debtor has demonstrated adequate assurance of future performance under section 365 of the Bankruptcy Code.

l.   **"As Is, Where Is"**:  The proposed transfer of any of the Debtor's assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except to the extent set forth in the APA of the Successful Bidder (or other applicable transaction documentation) as accepted by the Debtor and approved by the Court.  Except as otherwise provided in the APA (or other applicable transaction documentation), all of the Debtor's rights, title, and interests in and to the assets will be transferred free and clear of all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code. All such liens, claims and encumbrances will attach to the net cash proceeds of the transaction.

m.   **Consultation Parties**:  The term "Consultation Parties" shall mean Simmons and the Committee.  The Debtor shall consult with the Consultation Parties as required by the Bidding Procedures. Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtor.

n.   **Modification of Bidding Procedures**:  The Debtor reserves the right to modify the Bidding Procedures, in consultation with the Consultation Parties, to the extent the Debtor reasonably determines may be necessary to promote an efficient process.

o.   **Damages for Failure to Close**:  If the Successful Bidder fails to consummate the transaction in accordance with the terms of its Successful Bid and applicable APA: (a) the Debtor will retain the Deposit of such bidder, to the extent provided by the APA, and (b) the Debtor will maintain the right to pursue all available remedies against such bidder.

<u>The Proposed Notice of the Bidding Process and Transaction Hearing</u>

22.   Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide at least 21 days' notice of the Transaction Hearing. Pursuant to Bankruptcy Rule 2002(c), notice of the transaction must include the time and place of the Auction and the hearing and the deadline for filing any objections to the relief requested herein. The Debtor proposes that, to be considered, objections to the transaction of the Successful Bidder and the Backup Bidder, or any component thereof, must be in writing, filed with the Bankruptcy Court and served so as to be received no

later than seven days before the Transaction Hearing on (a) the U.S. Trustee; (b) counsel to the Debtor, Dentons Bingham Greenebaum LLP, 3500 PNC Tower, 101 South Fifth Street, Louisville, KY 40202(Attn: April A. Wimberg and James R. Irving), (c) proposed counsel to the Committee, Frost Brown Todd LLP, 400 W. Market Street, 32nd Floor, Louisville, KY 40202 (Attn: Edward M. King); (d) counsel to Simmons, Bass, Berry & Sims PLC, 150 Third Avenue South, Suite 2800, Nashville, TN 37201 (Attn: Paul Jennings and Gene Humphreys); and (e) counsel to any Stalking Horse (collectively, the "Notice Parties").

23.    Further, on or before May 10, 2024, the Debtor will file a notice of contracts and leases that may be assumed and assigned in connection with a proposed transaction (the "Assumption Notice") that identifies the proposed cure amounts for each (the "Proposed Cure Amounts").  The Debtor shall promptly serve the Assumption Notice on the counterparties to the contracts and leases listed thereon, and such counterparties shall have 14 days from the date of service of the Assumption Notice to file a written objection with the Bankruptcy Court to the Proposed Cure Amount ("Cure Objection").  Any party who fails to timely file a Cure Objection shall be forever barred from objecting to the Proposed Cure Amounts or from challenging the sufficiency of such amounts on any basis. Furthermore, such party shall be deemed to have consented to the Proposed Cure Amounts.  All other objections to assumption and assignment of a particular contract or lease (i.e., those objections that are **not** based on a cure amount) are reserved for consideration at the Transaction Hearing and are subject to the selection of the Successful Bid and Backup Bid.

24.    The Debtor submits that the notice of the Motion, the Auction and the Transaction Hearing as provided for herein complies fully with Bankruptcy Rule 2002, Local Rule 2002-1, and constitutes good and adequate notice of the proposed transaction. Therefore, the Debtor

13

respectfully requests that this Bankruptcy Court approve the notice procedures proposed above (the "Notice Procedures").

B<small>ASIS FOR</small> R<small>ELIEF</small> R<small>EQUESTED</small>

**A.      The Bidding Procedures are Necessary and Appropriate to Effectuate the Bidding Process and Should be Approved.**

25.      Pursuant to section 363(b) of the Bankruptcy Court, after notice and a hearing, the Debtor may be authorized to use, sell, or lease outside of the ordinary course of business.  11 U.S.C. § 363(b)(1).  Furthermore, the Bankruptcy Court has the authority to issue "any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a).  Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  F<small>ED.</small> R. B<small>ANKR.</small> P. 6004(f)(1).

26.      The paramount goal of any proposed sale of property of the debtor's estate is to maximize the value of the sale proceeds received by the estate. *See In re Big Rivers Elec. Corp.*, 233 B.R. 726, 734 (Bankr. W.D. Ky. 1998) ("a Chapter 11 DIP owes a fiduciary duty to all of the creditors and other interest holders of its bankruptcy estate to maximize the value of the bankruptcy estate"); *see also In re Jillian's Entm't Holdings*, 327 B.R. 616, 618 (Bankr. W.D. Ky. 2005) (in selling estate assets, the plan administrator should "maximize the return to the bankruptcy estate"); *In re Omegas Grp, Inc.*, 16 F.3d 1443, 1452 (6th Cir. 1994) ("the Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern"). Courts recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate.  *In re JW Res., Inc.*, 536 B.R. 193, 196 (Bankr. E.D. Ky. 2015); *see also Calpine Corp. v. O'Brien Envtl. Energy, Inc.* (*In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding

14

provide a benefit to a debtor's estate); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1992) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for fair and efficient resolution of bankrupt estates.").

27.    A debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate.  *See, e.g., In re Michael Day Enters., Inc.*, 2010 Bankr. LEXIS 4381 (Bankr. N.D. Ohio Jan. 13, 2010); *In re Berkeley Premium Nutraceuticals, Inc.*, 2008 Bankr. LEXIS 3578 (Bankr. S.D. Ohio Dec. 26, 2008); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that bidding procedures negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

28.    Further, in a sale of property of the estate, the debtor's primary goal is to maximize the proceeds received by the estate.  *See also Pacificorp. Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 233 B.R. 739, 752 (W.D. Ky. 1998) ("when a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold") (internal quotation omitted); *In re Nashville Senior Living*, 2008 Bankr. LEXIS 3197 (Bankr. M.D. Tenn. Oct. 22, 2008).  Further, a debtor maximizes value for creditors by selecting the 'highest and best bid, and thereby protecting the interests of [the] debtor, its creditors, and its equity holders.'"  *In re GSC, Inc.*, 453 B.R. 132, 169-170 (Bankr. S.D.N.Y. 2011) (*quoting In re Fin. News Networks, Inc.*, 126 B.R. 152, 157 (S.D.N.Y. 1991)).

29.    As a result, courts routinely recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate

and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets").

30.    Accordingly, the Debtor believes, in its business judgment, that the proposed Bidding Procedures will facilitate the Bidding Process and promote competitive bidding from the most interested parties and will therefore elicit the highest and best offers available for a potential transaction. The proposed Bidding Procedures will allow the Debtor to conduct the Bidding Process in a controlled, transparent and fair fashion that will encourage meaningful input from key constituents and participation by financially capable bidders who will offer the best proposals under the circumstances, and who can demonstrate the ability to close a transaction.  The Debtor believes that the Bidding Procedures are consistent with other procedures previously approved by bankruptcy courts, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

**B.    The Debtor Should be Authorized to Designate a Stalking Horse and Provide a Stalking Horse Protections in Their Discretion.**

31.    The Debtor also seeks authority to designate a Stalking Horse and offer customary Stalking Horse Protections, including a Breakup Fee, an Expense Reimbursement and a minimum Bidding Increment.  The Debtor will file a notice of any such designation by the Stalking Horse Designation Deadline and believes that having the flexibility and authority to do so will benefit the overall Bidding Process and motivate bidders to provide their highest and best offers.

32.    In the event that a Stalking Horse is designated, its Bid will be subject to higher and better offers through competitive bidding at an Auction. The use of a stalking horse in a public auction process pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, because the use of a stalking horse bid is, in many circumstances, the best way to

maximize value in an auction process by locking in a purchase price "floor" and helping to garner interest in the assets.  As a result, stalking horse bidders virtually always require breakup fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process.

33.    Approval of the Breakup Fee and other forms of bid protections in this context is an established practice in chapter 11 cases. Courts within the Sixth Circuit use several approaches in evaluating breakup fees. *See In re JW Res., Inc.*, 536 B.R. 193 (Bankr. E.D Ky. 2015) (noting that courts have a variety of ways to evaluate breakup fees including (i) a debtor's business judgment, (ii) whether the fee is in the best interest of the estate, or (iii) treating the fee as an administrative claim). Courts within the Sixth Circuit recognize that termination and similar fees may be used to protect bidders in connection with a sale of assets pursuant to section 363 of the Bankruptcy Code and that "the purpose of a break-up fee is to induce the stalking horse bidder to enter into and pursue a transaction through an auction and closing." *Id.* at 196. Such protections enable a debtor to assure a sale to a contractually committed bidder at a price the debtor believes is fair and reasonable, while providing the debtor with the opportunity of obtaining even greater benefits for the estate through an auction process. *Id.* (internal citations omitted). Courts within the Sixth Circuit have approved similar breakup fees in other chapter 11 cases.  *In re JW Res., Inc.*, 536 B.R. at 193 (approving breakup fee of $375,000); *In re Innovative Mattress Solutions, LLC et al.*, Case No. 19-50042-grs [D.I. 334] (Bankr. E.D. Ky. Feb. 25, 2019) (approving breakup fee of $650,000, which was between 2% and 3% of stalking horse bid amount); *In re Clearwater Natural Resources, LP et al.,* Case No. 09-70011 [D.I. 985] (Bankr. E.D. Ky. December 14, 2009) (approving breakup fee of $500,000, which was between 2% and 3% of cash portion of the stalking horse bid amount).

34.    Other courts have approved similar bid protections and breakup fees to what is sought here.  *See e.g., In re Kmart,* No. 02-B-02474 (Bankr. N.D. Ill. May 10, 2002) (authorizing a termination fee and overbid protections for potential bidders); *In re Comdisco, Inc.*, No. 01-24795 (RB) (Bankr. N.D. Ill. Aug. 9, 2002) (approving a terminate fee, as *inter alia*, an actual and necessary cost and expense of preserving the debtor's estate, of substantial benefit to the debtor's estate, and a necessary inducement for, and a condition to, the proposed purchaser's entry into the purchase agreement); *In re HMX Acquisition Corp.*, No. 12-14300 (ALG) (Bankr S.D.N.Y. Nov. 29, 2012) (approving a breakup fee of approximately 3% of the purchase price); *In re The Great Atlantic & Pacific Tea Company, Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. May 2, 2011) (approving a breakup fee of 2.5% of the purchase price); *In re BearingPoint, Inc.*, No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); *In re Silicon Graphics, Inc.*, No. 09- 11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving breakup fee of approximately 2.8% of the purchase price); *In re Steve & Barry's Manhattan LLC*, No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving breakup fee of 2% of the purchase price).

35.    The Debtor believes that the ability to select a Stalking Horse and grant the Stalking Horse Protections is beneficial to its estate and its creditors, as a Stalking Horse's Bid would establish a floor for further bidding and potentially increase the value of the assets for the benefit of the estate. Given the expedited nature of the Bidding Process, the Debtor's ability to offer bid protections and a Breakup Fee to potential bidders may induce a potential bidder to serve as a Stalking Horse. Having a Stalking Horse identified will provide certainty regarding the outcome of the Bidding Process and will likely stimulate the market for bids on the Debtor's assets.

C.    **The Transaction Should be Approved Pursuant to Section 363 of the Bankruptcy Code.**

36.    Section 363(b) of the Bankruptcy Code provides that a debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business.  *See, e.g., In re Concord Steel, Inc.*, 2009 Bankr. LEXIS 5196 (Bankr. N.D. Ohio Dec. 9, 2009); *In re Country Manor*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994) ("sound business purpose test has four (4) requirements: 1) sound business reason; 2) accurate and reasonable notice; 3) adequate price; and 4) good faith") (internal citation omitted); *Licensing by Paolo, Inc.  v. Sinatra (In re Gucci),* 126 F.3d 380, 387 (2d Cir. 1997), *citing Comm. of Equity Sec. Holders v.  Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Global Crossing Ltd.,* 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In  re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phx. Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and the transaction is in good faith).

37.    The Debtor has sound business justifications for marketing and seeking to identify an appropriate transaction to maximize value, including a possible sale of assets pursuant to section 363 of the Bankruptcy Code. The Bidding Process is designed to identify the highest and best transaction for the Debtor that will maximize value in the Chapter 11 Case, and such process will involve Simmons, any Committee, and other key stakeholders and interested parties. Thus, the Bidding Process is reasonably expected to yield a transaction that will be beneficial to the estate and is capable of being approved.

38.    The Debtor will file a notice of the Successful Bid and Backup Bid with the Bankruptcy Court following an Auction as described above.

D.    **It Is Appropriate to Approve the Sale Transaction Free and Clear.**

39.    If the transaction selected as the Successful Bid is a sale transaction, the Debtor requests approval to sell the assets that are the subject of that sale transaction free and clear of any and all liens, claims, and encumbrances to the fullest extent permitted by section 363(f) of the Bankruptcy Code.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

- applicable nonbankruptcy law permits sale of such property free and clear of such interest;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

- such interest is in *bona fide* dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary for a debtor to meet one of the five conditions of section 363(f). *See Mich. Employment Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) written in disjunctive; holding that court may approve sale "free and clear" provided at least one of the subsections of Bankruptcy Code 363(f) is met).

40.    The Debtor believes that each of the parties holding claim or interests in the assets to be sold could be compelled to accept a monetary satisfaction of such claims.  In addition, absent any objection to this Motion, certain holders of claims or interests may be deemed to have consented to the sale of the assets. Finally, any liens, claims or interests that may exist will attach to the net

cash proceeds of such transaction, subject to any claims and defenses the Debtor may possess with respect thereto. Accordingly, the Debtor believes that (a) the transaction will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (b) the sale of any assets through the transaction should be approved free and clear of liens, claims and encumbrances.

### E. The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases is Appropriate.

41.     Section 365(a) of the Bankruptcy Code provides that, subject to the Court's approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. *See In re VisionAmerica, Inc.*, 2001 Bankr. LEXIS 1142, *17 (Bankr. W.D. Tenn. Sept. 12, 2001); *In re Structurelite Pastics Corp.*, 1988 Bankr. LEXIS 658, *7 (Bankr. S.D. Ohio May 11, 1988); *Nostas Assocs. v. Ostich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

42.     Under section 365(f)(2) of the Bankruptcy Code, a trustee may assign an executory contract or unexpired lease of nonresidential property if:

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

43.     The meaning of adequate assurance of future performance depends upon the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no

single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."); *see also Carlisle Homes, Inc. v. Arrais (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989).

44.    Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Barnhill's Buffet, Inc.*, 2008 Bankr. LEXIS 2864 (Bankr. M.D. Tenn. Feb. 28, 2008) (the Court must consider whether purchaser can meet its financial obligations relative to the contracts or leases being assumed and assigned); *In re Bygraph, Inc.*, 56 B.R. 597, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

45.    The Debtor, together with the ultimate Successful Bidder, intends to present evidence at the Transaction Hearing to provide the financial credibility, willingness, and ability of the Successful Bidder to perform under the assumed contracts and leases. The Court and other interested parties will therefore have the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance of the assumed contracts and leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

46.    In addition, the cure procedures are appropriate and consistent with section 365 of the Bankruptcy Code.  To the extent that any defaults exist under any assumed executory contract, any such default will be cured pursuant to the Successful Bidder's APA. Any provision in the assumed executory contracts that would restrict, condition, or prohibit an assignment of such contracts will be deemed unenforceable under section 365(f)(1) of the Bankruptcy Code.

23701056.v4

47. Accordingly, the Debtor submits that the cure procedures for effectuating the assumption and assignment of the assumed contracts and leases as set forth herein are appropriate and should be approved.

WHEREFORE, the Debtor respectfully requests that the Bankruptcy Court enter an order granting the relief requested herein and such other or further relief as is just and proper.

Dated: April 26, 2024                                    Respectfully submitted,


/s/ James R. Irving
April A. Wimberg
James R. Irving
Ashley A. Brown
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone:  (502) 587-3606
E-mail:        april.wimberg@dentons.com
                   james.irving@dentons.com
                   ashley.brown@dentons.com


*Counsel to the Debtor*


## CERTIFICATE OF SERVICE

I certify that on April 26, 2024, I filed the Motion using the Court's EM/ECF system, which will send notification of such filing to CM/ECF participants who have appeared in this case.


/s/ James R. Irving
James R. Irving

*Counsel for the Debtor*

23701056.v4