UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| The Lyon Companies, LLC | ) Case No. 24-30684-jal |
| | ) |
| Debtor. | ) Honorable Joan A. Lloyd |
| | ) |

## ORDER APPROVING BIDDING PROCEDURES

Upon the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order (I) Approving Bidding Procedures; (II) Approving the Transaction Ultimately Selected as the Highest and Best Alternative Through the Bidding Process, Including a Possible Sale of Assets Free and Clear of Liens, Claims and Encumbrances; and (III) Granting Related Relief* (the "Motion");[1] the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Debtor having provided adequate and appropriate notice of the Motion under the circumstances; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY FINDS THAT:

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

23701261.v4

A. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Good and sufficient notice of the Motion and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to all parties in interest.

D. The bases for relief requested in the Motion are: (i) sections 105(a) 363 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"); as well as (ii) rules 2002 and 6004, of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

E. The Debtor has articulated good and sufficient business reasons for this Court to grant the relief requested in the Motion, including, without limitation, to approve the Bidding Procedures. Such good and sufficient business justification, which was set forth in the Motion and on the record at the hearing, are incorporated herein by reference and, *inter alia*, form the basis for the Court's findings of fact and conclusions of law herein.

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as provided herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to this Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

23701261.v4

3. The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, and shall govern all aspects of the transaction process, including the submission of bids and proceedings relating to the efforts of the Debtor to investigate all available transaction alternatives to maximize value in this Chapter 11 Case.

4. The Debtor, in consultation with the Consultation Parties, may modify the Bid Procedures as they deem necessary or appropriate to facilitate the Bidding Process. Notice of any material modifications must be filed with the Court as soon as practicable.

5. The Debtor is hereby authorized, but not directed, to designate a Stalking Horse and to offer such Stalking Horse any or all of the Stalking Horse Protections as the Debtor deems necessary or appropriate in their business judgment and in consultation with the Consultation Parties. Such designation can be made by the Debtor at any time during the Bidding Process in their business judgment, but in no event later than the Stalking Horse Designation Deadline. The Debtor shall file a notice of any such designation with the Bankruptcy Court by the Stalking Horse Designation Deadline. To the extent that the Debtor does not designate a Stalking Horse by the Stalking Horse Designation Deadline, then the Debtor, in consultation with the Consultation Parties, may establish a minimum bid amount which it will file a notice of with the Bankruptcy Court.

6. On or before May 10, 2024, the Debtor shall file an Assumption Notice that identifies the Proposed Cure Amounts. Such counterparties shall have **14 days from the date of service** of the Assumption Notice to file a written objection with the Bankruptcy Court to the Proposed Cure Amount ("Cure Objection"). Any party who fails to timely file a Cure Objection shall be forever barred from objecting to the Proposed Cure Amounts or from challenging the sufficiency of such amounts on any basis. Furthermore, such party shall be deemed to have

3

consented to the Proposed Cure Amounts. All other objections to assumption and assignment of a particular contract or lease (i.e., those objections that are **not** based on a cure amount) are reserved for consideration at the Transaction Hearing and are subject to the selection of the Successful Bid(s) and Backup Bid.

7. The deadline for submitting a final and binding Bid in accordance with the Bidding Procedures is no later than **5:00 p.m. (Eastern Daylight) on June 20, 2024.**

8. If more than one Qualified Bid is timely received, the Debtor will conduct an Auction on **June 24, 2024 2024 at 10:00 a.m. (Eastern Daylight)** (the "Auction Date") at the offices of Debtor's counsel located at 3500 PNC Tower, 101 South Fifth Street, Louisville, Kentucky 40202, or such other location as may be determined by the Debtor and communicated to Qualified Bidders.

9. Any objections to the proposed transaction contemplated by the Successful Bid(s) and/or the Backup Bid (other than objections to proposed cure amounts for contracts or leases to be assumed and assigned) shall be filed with the Bankruptcy Court and served so as to be received no later than **June 25, 2024 at 4:00 p.m. (Eastern Daylight)** (the "Transaction Objection Deadline") on (a) the U.S. Trustee; (b) counsel to the Debtor, Dentons Bingham Greenebaum, LLP, 3500 PNC Tower, 101 South Fifth Street, Louisville, Kentucky 40202(Attn: April A. Wimberg and James R. Irving); (c) proposed counsel to the Committee, Frost Brown Todd LLP, 400 W. Market Street, 32nd Floor, Louisville, KY 40202 (Attn: Edward M. King); (d) counsel to Simmons, Bass, Berry & Sims PLC, 150 Third Avenue South, Suite 2800, Nashville, Tennessee 37201 (Attn: Paul Jennings and Gene Humphreys); and (e) counsel to any Stalking Horse (collectively, the "Notice Parties").

10. The Transaction Hearing in respect of the Successful Bid(s) and Backup Bid will

23701261.v4

be conducted by the Bankruptcy Court on June 26, 2024 at 10:00 a.m. (Eastern Daylight) in Courtroom #1, 5th Floor, 601 W. Broadway, Louisville, Kentucky. NO VIDEO CONFERENCING IS AVAILABLE FOR THIS HEARING.

11. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Bid Procedures Order.

12. Notwithstanding anything to the contrary contained in this Bid Procedures Order or otherwise, any right of the Simmons to consent to the sale of any portion of their collateral, including, without limitation, any assets on terms and conditions acceptable to the Simmons (as applicable) are hereby expressly preserved and not modified, waived or impaired in any way by the Bidding Procedures or this Bid Procedures Order. For the avoidance of doubt, nothing in this Bid Procedures Order or the Bidding Procedures shall amend, modify, or impair any provision of the Interim Cash Collateral Order, the rights of the Debtor, or the Simmons.

13. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bid Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

14. In the event of any inconsistencies between this Bid Procedures Order, any asset purchase agreement, the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

15. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16. Notwithstanding Bankruptcy Rule 6004 or otherwise, this Bidding Procedures Order shall be effective and enforceable immediately upon entry and its provisions shall be self-

23701261.v4

executing.

17. All parties in interest reserve their rights to object to the approval of the transaction selected as the Successful Bid and/or the Backup Bid.

18. This Bankruptcy Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order.

Tendered by:

*/s/ James R. Irving*
April A. Wimberg
James R. Irving
Ashley A. Brown
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3719
Email:    april.wimberg@dentons.com
            james.irving@dentons.com
            ashley.brown@dentons.com

*Counsel to the Debtor*

23701261.v4

# EXHIBIT 1

**(Bidding Procedures)**

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| The Lyon Companies, LLC | ) ) ) | Case No. 24-30684-jal |
| Debtor. | ) ) ) ) | Honorable Joan A. Lloyd |

**BIDDING PROCEDURES**

On March 15, 2024, The Lyons Companies, LLC (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"). The Debtor is continuing to manage and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court granted the *Motion of the Debtor and Debtor-in-Possession for Entry of an Order (I) Approving Bidding Procedures; (II) Approving the Transaction Ultimately Selected as the Highest and Best Alternative Through the Bidding Process, Including a Possible Sale of Assets Free and Clear of Liens, Claims and Encumbrances; and (III) Granting Related Relief* (the "Motion") and entered an order approving these bidding procedures (the "Bidding Procedures," and such order, the "Bid Procedures Order"). The Court will have jurisdiction with respect to any dispute that may arise with respect to these Bidding Procedures

These Bidding Procedures set forth the process (the "Bidding Process") by which the Debtor is authorized to conduct an auction for the sale (the "Sale") of its assets (the "Auction") pursuant to section 363 of the Bankruptcy Code, to determine the Successful Bidder(s) (as defined below), or to conduct a refinancing, restructuring, recapitalization, or other form of transaction structure identified through the Bidding Process that is deemed to be the highest and best alternative available under the circumstances.

**Transaction Process**

a. **Stalking Horse Proposal Deadline**: Potential Transaction Counterparties interested in submitting a proposal to serve as Stalking Horse should submit a Bid (a "Stalking Horse Proposal") by no later than **May 24, 2024**. A Stalking Horse Proposal should comply with all of the conditions of a Bid (as defined below) so that the Debtor may evaluate such Stalking Horse Proposal.

The Debtor reserves the right, in consultation with the Consultation Parties, to enter into an agreement with a Stalking Horse and provide such Stalking Horse with any

1

23701261.v4

or all of the Stalking Horse Protections. The Debtor is under no obligation, however, to choose a Stalking Horse or to offer any of the Stalking Horse Protections.

If the Debtor identifies a Stalking Horse, the Debtor will file a notice with the Court and serve such notice on all other Qualified Bidders identifying the Stalking Horse and the terms of the Stalking Horse Bid, including any Stalking Horse Protections that have been agreed tom by the Stalking Hirse Designation Deadline. To the extent that the Debtor does not dfesignate a Stalking Horse by the Stalking Horse Designation Deadline, then the Debtor, in consultation with the Consultation Parties, may establish a minimum bid amount which it will file a notice of with the Bankruptcy Court.

b. **Form of Transaction**: All Stalking Horse Proposals and Bids (defined below) must provide a description of the proposed transaction (the "Proposed Transaction"), including an indication of whether the Proposal relates to an acquisition of the entire business or a portion of the Debtor's assets, a refinancing of the Debtor's indebtedness, or any other form of transaction. The Proposal must also provide an overview of the key terms of the transaction as well as the anticipated transaction structure. If the Proposal is for the purchase of less than the entire business, the Proposal must specify which assets will be acquired.

If the Proposal is for a refinancing transaction, the Proposal must provide the amount and form of capital, proposed sources and uses, post-transaction equity ownership, treatment of existing debt, contemplated leverage, milestones, and any other similar substantive terms.

The Debtor will file a form of proposed asset purchase agreement (the "Form APA") within seven days of entry of the Bid Procedures Order and make a Word version of such Form APA in the Data Room. If a Proposed Transaction is a bid for the purchase of the Debtor's assets under section 363 of the Bankruptcy Code, then any Bid (defined below) must contain a blackline comparing the Potential Transaction Parties' executed APA to the Form APA. Provided, however, that if a Stalking Horse is designated then any Bid (defined below) must instead contain a blackline comparing the Potential Transaction Parties' executed APA to the Stalking Horse's APA.

c. **Final Bid Deadline**: All final and binding bids ("Bids") must be received by the Debtor's counsel on or before **5:00 p.m. (EST) on June 20, 2024** (the "Bid Deadline").

d. **Qualified Bid Requirements**: There are specific requirements for a Bid to be a qualified bid that will be considered by the Debtor (a "Qualified Bid") and reserve all rights in that regard. The Debtor will determine, after consultation with its professionals and the Consultation Parties, and subject to the Bidding Procedures and the requirements set forth herein, whether a Bid is a Qualified Bid and, ultimately, a successful bid. At minimum, to be a Qualified Bid, a Bid must be

2

23701261.v4

timely and submitted in writing with all required information and supporting documentation, and include the following:

(i) a Bid for a sale transaction must include an executed asset purchase agreement ("APA"), clearly setting forth any conditions for closing and stating that the Bid is irrevocable as set forth below. If a Proposed Transaction is a bid for the purchase of the Debtor's assets under section 363 of the Bankruptcy Code, then any Bid (defined below) must contain a blackline comparing the Potential Transaction Parties' executed APA to the Form APA. Provided, however, that if a Stalking Horse is designated then any Bid (defined below) must instead contain a blackline comparing the Potential Transaction Parties' executed APA to the Stalking Horse's APA;

(ii) a Bid that requires the assumption and assignment of an executory contract or unexpired lease must identify with particularity each and every unexpired lease or executory contract (each, an "Assumed Contract") to be assumed and assigned, and include an executed assumption and assignment agreement;

(iii) a Bid must identify the structure proposed for undertaking the Proposed Transaction, including, if the Proposed Transaction is a Sale, the specific assets of the Debtor being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's structure relies;

(iv) a Bid must be final and binding, and shall not be contingent upon any further due diligence investigation, any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(v) a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor in consultation with the Consultation Parties) sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (whether because the party is a newly-formed entity or otherwise; each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(vi) a Bid must contain financial and/or other information that will allow the Debtor, in consultation with the Consultation Parties, to make a reasonable determination as to the bidder's financial and other capabilities to provide adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve on counterparties to any contracts or leases being assigned in

3

23701261.v4

connection with the proposed sale that have requested, in writing, such information;

(vii) a Bid must disclose the identity of the bidder's organization and principals;

(viii) a Bid must include an acknowledgement and representation that the bidder (a) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets to be acquired and liabilities to be assumed in making its bid; (b) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding any assets to be acquired or liabilities to be assumed or the completeness of any information provided in connection therewith, including by the Debtor, their professionals or any of their respective professionals and advisors, except as expressly stated in the APA or other transaction documentation; (c) is a sophisticated party capable of makings its own assessments in respect of making its Bid; and (d) has had the benefit of independent legal advice in connection with its Bid;

(ix) a Bid must (a) include an acknowledgement and representation that the bidder will assume the obligations of each of the Debtor under all executory contracts, unexpired leases, and licenses proposed to be assigned; (b) contains the bidder's agreement to pay the related cure costs; and (c) indicate which of these executory contracts, unexpired leases, and licenses, if any, the bidder must be permitted to assume as a condition of closing;

(x) a Bid must provide for closing of the transaction no later than July 19, 2024;

(xi) a Bid must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transaction;

(xii) a Bid for a sale transaction must include a cashier's check or be accompanied by a wire transfer payable or delivered to the Debtor, their counsel, or other agreed upon escrow agent, in an amount equal to five percent (5%) of the total purchase price in the APA, but not to exceed $300,000 (excluding any value associated with assumed liabilities, leases or contracts, the "Deposit");

(xiii) a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the assets to be acquire or with respect to any possible transaction involving the Debtor;

(xiv) a Bid must acknowledge in writing (a) that the bidder has not engaged in any collusion with respect to any Bids, specifying that it did not agree with any other Potential Transaction Party to control price; and (b) that the bidder agrees not to engage in any collusion with respect to any Bids, the Auction, or any Proposed Transaction;

4

23701261.v4

    (xv)    a Bid must constitute a good faith, *bona fide* offer to consummate a Proposed Transaction; and

    (xvi)    a Bid must submit the bidder to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes related to the Debtor's qualifications of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Proposed Transaction documents and the closing, as applicable.

e.    **Evaluation of Qualified Bids**: The Debtor will determine the sufficiency of any submitted Bid, after consultation with the Consultation Parties, and they reserve the right to consider late Bids in their discretion and to waive any of the requirements for a Bid to be a Qualified Bid in consultation with the Consultation Parties. The Debtor shall, as promptly as practicable, notify bidders of their selection as a qualified bidder (each a "Qualified Bidder") and that their Bid is a "Qualified Bid."

f.    **The Auction**: If more than one Qualified Bid is received, an Auction may be conducted on **June 24, 2024 at 10:00 a.m. (Eastern Daylight)** (the "Auction Date") at the offices of Debtor's counsel, or such other location as may be determined by the Debtor and communicated to Qualified Bidders. Qualified Bidders at the Auction will be informed of the terms of the previous Bids made by other Qualified Bidders, including the identity of the Qualified Bid that the Debtor determines is the highest or best Bid received by the Bid Deadline. Each Qualified Bidder at the Auction shall confirm that it has not engaged in any collusion with regard to the bidding or any sale of assets to be acquired. Any assets to be acquired shall be sold free and clear of all liens, claims, and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code.

g.    **Auction Procedures**: At the Auction, the Debtor reserves the right to disclose procedures that will govern the conduct of the Auction, including any minimum overbid requirements. The Debtor reserves the right to modify such procedures in any way, subject to the reasonable consent of the Consultation Parties. The Auction may be adjourned or cancelled as the Debtor, after consultation with the Consultation Parties, deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants.

h.    **Selection of Successful Bid**: At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor, in consultation with the Consultation Parties (the "Successful Bid"). The Debtor also reserves the right to select a successful backup Bid in their sole discretion (the "Backup Bid"). As soon as practicable thereafter, the Debtor shall file with the Bankruptcy Court a notice of the Successful Bid and the Backup Bid. The Successful Bid and the Backup Bid are binding upon the bidders who made them, and such parties shall be obligated to close such transactions subject to approval of the transaction by the Bankruptcy Court (and in the case of the Backup Bid, only in the event the Successful Bid fails to close).

i. **Backup Bid**: If the Successful Bidder fails to consummate the transaction, breaches the APA or other applicable transaction documents, or otherwise fails to perform, upon consultation with the Consultation Parties, the Debtor may consummate the proposed transaction with the Backup Bidder and without the need for further Court approval.

j. **Right to Credit Bid**: Any Qualified Bidder who has a valid and perfected lien on any of the Debtor's assets (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's allowed secured claims pursuant to section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided* that a credit bid shall not constitute a Qualified Bid if the Bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any of the assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment). Simmons reserves the right to credit bid some or all of their claims in the Collateral (as defined in the Interim Cash Collateral Order) to the extent permitted by section 363(k) of the Bankruptcy Code.

k. **Transaction Hearing**: The hearing in respect of the Successful Bid and Backup Bid (the "Transaction Hearing") will be conducted by the Bankruptcy Court on June 26, 2024 at 10:00 a.m. (Eastern Daylight). At the Transaction Hearing, the Debtor will request that the Court enter the order approving the transaction (the "Transaction Approval Order"). The Bankruptcy Court shall also determine: (a) any cure required under section 365(b) of the Bankruptcy Code if the affected landlord or contract party timely filed an objection to the Debtor's proposed cure of any unexpired lease or executory contract to be assumed and assigned, and (b) if applicable, whether the Debtor has demonstrated adequate assurance of future performance under section 365 of the Bankruptcy Code.

l. **"As Is, Where Is"**: The proposed transfer of any of the Debtor's assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except to the extent set forth in the APA of the Successful Bidder (or other applicable transaction documentation) as accepted by the Debtor and approved by the Court. Except as otherwise provided in the APA (or other applicable transaction documentation), all of the Debtor's rights, title, and interests in and to the assets will be transferred free and clear of all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code. All such liens, claims and encumbrances will attach to the net cash proceeds of the transaction.

m. **Consultation Parties**: The term "Consultation Parties" shall mean Simmons and the Committee. The Debtor shall consult with the Consultation Parties as required by the Bidding Procedures. Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtor.

6

      n.      **Modification of Bidding Procedures**:  The Debtor reserves the right to modify the Bidding Procedures, in consultation with the Consultation Parties, to the extent the Debtor reasonably determines may be necessary to promote an efficient process.

      o.      **Damages for Failure to Close**:  If the Successful Bidder fails to consummate the transaction in accordance with the terms of its Successful Bid and applicable APA: (a) the Debtor will retain the Deposit of such bidder, to the extent provided by the APA, and (b) the Debtor will maintain the right to pursue all available remedies against such bidder.

      p.      **Reservation of Rights**: Notwithstanding the Debtor's designation of a Stalking Horse and/or receipt of any Qualified Bids for any particular transaction, the Debtor may continue to negotiate and solicit Bids. The Debtor reserves the right, after consultation with the Consultation Parties, to enter into agreements for the sale of their assets or other transactions without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction. Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the transaction.

The Debtor reserves the right to implement additional procedural rules, after consultation with the Consultation Parties, provided such additional rules are not inconsistent with these Bidding Procedures.

###